Oscar Stilley Attorney at Law Central Mall Plaza Suite 516 5111 Rogers Avenue Fort Smith, AR 72903-2041
Dear Mr. Stilley:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 1993), of a popular name and ballot title for a proposed amendment to the Arkansas Constitution. You previously made a similar submission which resulted in Attorney General Opinion 99-262, wherein I declined to certify the proposed popular name and ballot title due to several ambiguities in the text of your proposed amendment. You have changed the text of your measure, and have submitted for my approval the following popular name and ballot title:
 POPULAR NAME AN AMENDMENT PROVIDING THAT PERSONS INCARCERATED IN ARKANSAS PRISONS MUST BY PRODUCTIVE LABOR PAY THE FULL COSTS OF THEIR INCARCERATION, AS A CONDITION OF RECEIVING CREDIT FOR GOOD TIME OR PAROLE ELIGIBILITY, PROVIDING FOR A COMMISSIONER OF CORRECTIONS TO MANAGE THE ARKANSAS PRISON SYSTEM, PROVIDING THAT CERTAIN PRISON INMATES MAY BE EMPLOYED BY ONE OR MORE PRIVATE COMPANIES IN ROAD CONSTRUCTION OR PRIVATE ENTERPRISE OFF PRISON GROUNDS, AND FOR OTHER PURPOSES
 BALLOT TITLE AN AMENDMENT TO THE ARKANSAS CONSTITUTION PROVIDING THAT ADULT INMATES AT ARKANSAS PRISONS SHALL NOT BE ENTITLED TO PAROLE OR GOOD TIME, EXCEPT FOR INMATES WHO BY PRODUCTIVE LABOR PAY THE FULL COST OF THEIR INCARCERATION; PROVIDING THAT INMATES WHO WORK BUT EARN LESS THAN THE AMOUNT REQUIRED TO PAY ALL COSTS OF THEIR INCARCERATION SHALL BE GRANTED EXTRA PRIVILEGES ACCORDING TO PRISON POLICIES; CREATING THE POSITION OF COMMISSIONER OF CORRECTION (HEREINAFTER SOMETIMES COMMISSIONER), TO BE FILLED BY NON-PARTISAN ELECTION AS SOON AS REASONABLY POSSIBLE AFTER PASSAGE OF THE AMENDMENT, AND AT EACH REGULARLY SCHEDULED STATEWIDE ELECTION THEREAFTER; PROVIDING THAT THE SOLE COMPENSATION OF SUCH COMMISSIONER SHALL BE 3% OF THE NET REDUCTION OF THE COSTS OF THE ARKANSAS DEPARTMENT OF CORRECTION (HEREINAFTER ADC) BELOW COSTS IN THE PREVIOUS FISCAL YEAR, PLUS 3/10TH OF 1% OF THE REDUCTION OF THE COST OF THE OPERATION OF THE ADC, FROM THE EXPENDITURES MADE IN FISCAL YEAR 1999, PLUS 10% OF ANY NET PROFITS OF THE ADC; PROVIDING THAT THE COMMISSIONER SHALL BE AUTHORIZED TO CONTRACT WITH AND ENTRUST PRISON INMATES TO ARKANSAS CORRECTION CORPORATION, AN EXISTING PRIVATE FOR PROFIT CORPORATION CHARTERED APRIL 15, 1999, AND ORGANIZED FOR THE PURPOSE OF EMPLOYING INMATES AND TEACHING THRIFT, INDUSTRY, AND RESPECT FOR THE PERSON AND PROPERTY OF OTHERS TO PRISON INMATES; (HEREINAFTER ACC) OR ANY OTHER ENTITY AUTHORIZED BY THE AMENDMENT TO BE ENTRUSTED WITH INMATES; GRANTING THE COMMISSIONER MAXIMUM FLEXIBILITY IN THE OPERATION AND STAFFING OF PRISONS; PROVIDING THAT THE COMMISSIONER IS AUTHORIZED TO PROMULGATE ALL REGULATIONS OF ACC, OR ANY OTHER ENTITY ENTRUSTED WITH INMATES, AS TO THE LOCATION AND TYPE OF HOUSING TO BE USED FOR INMATES, (WHETHER ON OR OFF PRISON PROPERTY) OR OTHERWISE DEEMED NECESSARY TO REDUCE THE RISK OF ESCAPE, AND REGULATIONS WITH RESPECT TO THE GRANTING OF GOOD TIME AND PAROLE; PROVIDING THAT THE COMMISSIONER MAY PRESCRIBE FORMS FOR THE CONTRACTS MADE BETWEEN ACC OR OTHER AUTHORIZED ENTITIES, AND INMATES, AND TO MAKE CONTRACTS WITH ACC AND OTHER AUTHORIZED ENTITIES; AUTHORIZING THE COMMISSIONER TO CONTRACT FOR THE HOUSING OF INMATES FROM OTHER STATES, WHERE SUCH CONTRACTS ARE ECONOMICALLY ADVANTAGEOUS TO ARKANSAS TAXPAYERS; ABOLISHING THE BOARD OF CORRECTION AND COMMUNITY PUNISHMENT, AND AUTHORIZING THE COMMISSIONER TO EMPLOY SUITABLE PERSONS TO PASS UPON APPLICATIONS FOR PAROLE, AND PERFORM ALL OTHER DUTIES NOW PERFORMED BY THE BOARD OF CORRECTION AND COMMUNITY PUNISHMENT; ABOLISHING ALL LIMITATIONS ON PAROLE OR GOOD TIME FOR SPECIFIC CLASSES OF PRISONERS, EXCEPT PERSONS SERVING SENTENCES FOR VIOLENT FELONIES; AUTHORIZING THE EMPLOYMENT OF INMATES AT PRODUCTIVE LABOR BY THE ADC, AN EXISTING STATE AGENCY, OR THE ACC; PROVIDING THAT ACC IS AUTHORIZED TO TAKE PHYSICAL CUSTODY OF INMATES DETERMINED BY THE COMMISSIONER OF CORRECTION TO BE QUALIFIED FOR EMPLOYMENT OUTSIDE PRISON PROPERTY, AND TO PROVIDE HOUSING FOR SAID INMATES AT ANY PLACE APPROVED BY THE COMMISSIONER; AUTHORIZING THE EMPLOYMENT OF INMATES BY OTHER SUITABLY BONDED ENTITIES IF ACC FAILS TO REDUCE THE COST OF ADC, TO ARKANSAS TAXPAYERS, TO NOT MORE THAN $50,000,000 ANNUALLY, FOR ANY FISCAL YEAR ENDING AFTER JULY 1, 2004; PROVIDING THAT THE ADC MAY NOT DEMAND OR RECEIVE COMPENSATION FOR THE PLACEMENT OF INMATES WITH ACC OR OTHER AUTHORIZED ENTITY, OTHER THAN THE SECURE HOUSING AND NECESSARY CARE OF THE INMATE, EXCEPT WHERE THE INMATES ARE USED FOR HIGHWAY CONSTRUCTION; PROVIDING THAT INMATES ENTRUSTED TO ACC OR OTHER AUTHORIZED ENTITY MAY BE EMPLOYED AT ANY SUITABLE EMPLOYMENT EXCEPT OPERATING PUBLIC RETAIL ESTABLISHMENTS, SCHOOLS, DAY CARE FACILITIES, HOSPITALS, OR SIMILAR FACILITIES IN WHICH THE PUBLIC'S INTEREST IN SAFETY AND SECURITY CANNOT BE REASONABLY PROTECTED; PROVIDING THAT INMATES ENTRUSTED TO ACC OR OTHER AUTHORIZED ENTITY MAY NOT MINGLE WITH THE GENERAL PUBLIC UNSUPERVISED; PROVIDING THAT SUFFICIENTLY PRODUCTIVE INMATES MAY BE PROVIDED WITH READJUSTMENT ACCOUNTS, FROM WHICH THE EXPENSES FOR THE HEALTH, EDUCATION, AND WELFARE OF THE PRISONER MAY BE PAID, THE REMAINDER OF WHICH SHALL BE USED FOR THE BENEFIT OF THE PRISONER UPON RELEASE, IN HIS OR HER TRANSITION TO FREE SOCIETY; PROVIDING THAT ACC, AND ANY OTHER ENTITY ENTRUSTED WITH THE CUSTODY OF INMATES FOR PURPOSES OF EMPLOYMENT, SHALL MAINTAIN ADEQUATE PHYSICAL SECURITY TO PREVENT ESCAPES OR INJURY TO PRIVATE PERSONS OR PROPERTY; PROVIDING FURTHER THAT ALL SUCH ENTITIES SHALL POST BOND AND BE LIABLE FOR INTENTIONAL OR NEGLIGENT DAMAGES CAUSED BY INMATES IN THEIR CUSTODY, NOT TO EXCEED $100,000 PER PERSON PER INCIDENT, UNTIL JANUARY 1, 2003, AT WHICH TIME THE MAXIMUM LIABILITY PER PERSON PER INCIDENT SHALL INCREASE TO $1,000,000; PROVIDING THAT INMATES HELD FOR VIOLENT FELONIES SHALL NOT BE ELIGIBLE FOR EMPLOYMENT OUTSIDE PRISON BOUNDARIES UNLESS AND UNTIL THE COMMISSIONER DETERMINES THAT THE PRISONER HAS MADE SUBSTANTIAL CHANGES THAT MATERIALLY REDUCE THE RISK OF FURTHER VIOLENCE AGAINST PERSONS OR PRIVATE PROPERTY; EXCLUDING INMATES HELD UNDER SENTENCES OF LIFE WITHOUT PAROLE OR DEATH SENTENCES FROM ELIGIBILITY FOR EMPLOYMENT OFF PRISON PROPERTY UNDER ANY CIRCUMSTANCES; PROVIDING THAT ALL SAVINGS OF TAX MONIES FROM THE REDUCTION OF COSTS OF PRISON OPERATIONS SHALL BE USED FOR ROADS AND HIGHWAYS; PROVIDING THAT INMATES MAY BE USED DIRECTLY IN HIGHWAY CONSTRUCTION, AND THAT THE DEPARTMENT OF CORRECTION SHALL RECEIVE CREDIT FOR THE VALUE OF SUCH CONSTRUCTION IN THE CALCULATION OF ITS PROFITS AND LOSSES; PROVIDING THAT THE STATE OF ARKANSAS SHALL NOT MAKE OR ENFORCE ANY LAW CONCERNING PRISON OPERATIONS, IF SAID LAW INCREASES THE COSTS OF THE ADC OR LIMITS OPPORTUNITIES TO ENHANCE THE REVENUE OF THE SYSTEM, UNLESS THE PROPONENT OF SAID STATE LAW PROVES THAT THE LAW OR REGULATION IS REASONABLY NECESSARY AND EFFECTIVE TO PROTECT A SUBSTANTIAL STATE INTEREST, AND THE OPPONENT OF SAID LAW OR REGULATION FAILS TO PROVE THAT AN ALTERNATIVE LESS COSTLY TO THE CITIZENRY WOULD REASONABLY PROTECT THE STATE'S INTEREST; PROVIDING FOR LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER, SEVERABILITY, AND GENERAL REPEALER OF CONFLICTING PROVISIONS; PROVIDING THAT THE AMENDMENT IS SELF-EXECUTING AND SHALL TAKE EFFECT JANUARY 1, 2001, EXCEPT AS OTHERWISE PROVIDED; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
It is my conclusion, based upon the above precepts, that your proposed popular name and ballot title are insufficient due to the following remaining ambiguities in the text of your measure:
 1. In the opening phrase of your proposed ballot title, reference is made to "adult inmates at Arkansas prisons. . . ." This language appears in the first paragraph of Section 2 of the text of your proposed amendment, but the textual language is followed by a parenthetical, i.e., "(hereinafter sometimes `inmate')." The term" inmate" is defined in Section 1 as "any person committed to the custody of the Arkansas Department of Correction [ADC]. . . ." I am unable to determine, notwithstanding the inclusion of the parenthetical in Section 2 of the text, whether the intent is to limit Section 2's applicability to persons in the custody of ADC. I am thus unable to revise the proposed ballot title to more accurately summarize this aspect of your proposed measure.
 2. Section 3 (b) (2) states in part that the Commissioner of Correction (Commissioner) shall be authorized to contract with the Arkansas Correction Corporation (ACC), or any other authorized entity, "for the housing, custody, and employment of inmates, (whether on or off prison property). . . ." Section 3 (b) (2) also states that the Commissioner shall be authorized to make all regulations of ACC, "including regulations as to the location and type of housing which may be used for inmates kept outside of prison grounds." Section 4, regarding the employment of inmates, states under subsection (a) that ACC is "authorized to take physical custody of inmates determined by the [Commissioner] to be qualified for employment, whether on or off prison property, and to provide housing for any inmates kept off prison property. . . ."
 Several ambiguities exist under the above language with respect to the housing, custody, and employment of inmates by ACC or other entities. It is unclear under what circumstances ACC or other entities will take custody of and provide housing for inmates. This is unclear from the text of your proposed measure (noted above), as well as your proposed ballot title. With regard to the ballot title, certain language suggests that ACC or other entities entrusted with inmates may provide housing for inmates on prison property (see ballot language regarding regulations by Commissioner" as to the location and type of housing to be used for inmates, (whether on or off prison property). . . .") The ballot title also states, however, that "ACC is authorized to take physical custody of inmates determined by the [Commissioner] to be qualified for employment outside prison property, and to provide housing for said inmates. . . ." I cannot reconcile this apparently conflicting language due to the textual ambiguity in Sections 3(b)(2) and 4(a).
 3. The statement in Section 3(b)(2) regarding the Commissioner's authority to make contracts "for the housing, custody, and employment of inmates" also raises the question whether this is authority for private entities to provide housing for inmates generally, i.e., apart from or unrelated to any contract for the employment of inmates. If this is, in fact, the intent, it should be clearly stated for proper inclusion in the ballot title as this would, in my judgment, be considered material and essential.
 4. The proposed amendment appears to be silent regarding compensation of ACC or other entities that contract with the Commissioner for the housing, custody, and employment of inmates. This was previously noted in Opinion 99-262. Although language has been added to the text regarding no minimum required payment in contracts between ACC and prisoners (Section 3 (b) (2)), the source of income for ACC is not clearly stated. This could, in my view, lead to a challenge based on the ballot title's omission of material information. Additionally, if it is contemplated that any state funds will flow to ACC or any other entity entrusted with inmates, I believe this should be clearly stated.
In my judgment, a ballot title that fails to include the above information would likely be viewed as misleading on these points. I cannot, however, resolve these ambiguities. These points must be clarified and included in your ballot title.
I reiterate that my office does not concern itself with the merits of proposed measures, nor do I have any constitutional role in the shaping or drafting of initiative or referendum measures. I am not your counsel in this matter and cannot advise you as to the substance of your proposal. At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Where the effects of a proposed measure on current law are unclear or ambiguous, however, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure, and ballot title and popular name. See
A.C.A. § 7-9-107(c). You may, after clarification of the issues discussed above, resubmit your proposed amendment, along with a new proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General